**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ditzha Flores,<br><br>          Plaintiff,<br><br>v.<br><br>Rafi Law Group PLLC,<br><br>          Defendant. | No. CV-23-02602-PHX-KML<br><br>**ORDER** |

      Plaintiff Ditzha Flores brings two Title VII retaliation claims against her former employer, defendant Rafi Law Group, PLLC ("RLG"). Flores's amended complaint includes statements RLG allegedly made during pre-suit settlement negotiations. RLG filed a motion to strike the portions of the complaint that describe those communications, arguing their inclusion violates Fed. R. Evid. 408. RLG later filed a counterclaim against Flores for abuse of process because Flores attached RLG's allegedly-threatening letters as exhibits to her response to the motion to strike. Flores filed a motion to dismiss RLG's abuse-of-process claim. RLG's motion to strike is denied and Flores's motion to dismiss RLG's abuse-of-process claim is granted.

**I.  Factual Background**

      Flores alleges that while she was working as a receptionist at RLG, she attended a company holiday party in which an employee grabbed her inner thigh, making her "feel uncomfortable and violated." (Doc. 12 at 2.) Paola Pescador, an attorney at the firm, allegedly reached out to Flores the next day "to see if she was okay after the incident" and

Pescador then "reported the incident to [human resources] and firm management." (Doc. 12 at 2–3.) On December 20, 2022, Flores met with two human resources employees but she "was immediately written up about a separate, already-resolved issue from weeks or months prior." (Doc. 12 at 3.) Flores claims it became "clear" that the meeting was "[not] to objectively investigate the unwelcomed touching/harassing behavior" from the holiday party. (Doc. 12 at 3.) Instead, she alleges, human resources told her to "resign and find a new job[.]" (Doc. 12 at 3.) Flores did not resign. The following day, RLG fired Flores because she "was no longer a good fit for the job." (Doc. 12 at 4.) Later in that meeting, Flores was told she "was terminated because [RLG] believed that her reporting the unwelcomed touching by a male attorney was actually her trying to 'blackmail' and 'extort' the firm." (Doc. 12 at 4.)

Approximately two months later, Flores told RLG she intended to file a "Charge of Discrimination with the EEOC regarding the unwelcomed touching and termination in retaliation for reporting it." (Doc. 12 at 4.) RLG's counsel then "made threats that [RLG] would file counterclaims against [her] if she were to move forward with pursuing her claims." (Doc. 12 at 4.) Flores's counsel asked RLG if it "would be interested in resolving this matter before the initiation of this lawsuit" but RLG declined. (Doc. 12 at 5.) RLG's threats form the basis of the retaliation claim alleged in Count 2. (Doc. 12 at 6–7.) RLG moves to strike the paragraphs that form the basis for that count. (Doc. 13 at 1.)

RLG advances much different facts than Flores regarding the reasons behind her termination. (*See* Doc. 19 at 7–11.) RLG's counterclaim alleges Flores "clocked in late 50 times out of 80 shifts[,]" "fail[ed] to follow receptionist call policies concerning clients and potential clients[,]" and "became intoxicated" and "behaved unprofessionally" at a company sporting event. (Doc. 19 at 7–8.) RLG also claims it received multiple complaints about Flores from its clients. (Doc. 19 at 7.) RLG alleges it made the decision to terminate Flores on December 15, 2022, but "the termination was delayed until the paperwork could be prepared." (Doc. 19 at 8.) The holiday party was the next day and RLG alleges Flores appeared to enjoy herself and did not complain to anyone in attendance about the grabbing

incident. (Doc. 19 at 8–9.) Rather, RLG claims, Flores "fabricated her allegations for sexual harassment." (Doc. 19 at 9.)

RLG moves to strike several paragraphs of the complaint under Fed. R. Civ. P. 12(f), arguing Flores's inclusion of "quotes and allegations from confidential settlement communications" violates Fed. R. Evid. 408. (*See* Docs. 13, 19 at 11.) RLG's abuse-of-process counterclaim likewise centers on its allegation that Flores included protected settlement communications in her complaint and attached them to her response to the motion to strike "for the primary purpose of harming, harassing, and abusing RLG, publicizing her false allegations of sexual harassment in a privileged manner to embarrass RLG, and dissuading third parties from doing business with RLG." (Doc. 19 at 11–12.) RLG also bases its counterclaim on Flores's inclusion of a sexual harassment count in the original complaint that she withdrew in the amended complaint. (Doc. 19 at 11.)

## II.   Motion to Strike

RLG moves to strike paragraphs 29, 30, 32, 33, 47, and 48 of Flores's amended complaint. (Doc. 13 at 1.) A motion to strike under Rule 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and "are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Ctr. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

RLG alleges the purportedly-strikable paragraphs discuss protected settlement-related communications between the parties in violation of Fed. R. Evid. 408. (Doc. 13 at 2–4.) Rule 408 prevents "conduct or [ ] statement[s] made during compromise negotiations about [a] claim" from being used as evidence "to prove or disprove the validity . . . of a disputed claim[.]" Fed. R. Evid. 408(a)(2). But such evidence can be admitted for "another purpose[.]" Fed. R. Evid. 408(b).

Whether Rule 408 issues may ever give rise to a Rule 12(f) motion to strike portions of a complaint is a matter of some debate. Indeed, "[c]ourts disagree on whether Rule 408 evidentiary objections may properly be raised in a Rule 12(f) motion to strike." *Johnson v.*

*Proctorio Inc.*, No. CV-21-00691-PHX-DLR, 2022 WL 621766, at *1 (D. Ariz. Mar. 3, 2022); *cf. Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123–24 (2d Cir. 1991) (noting the Federal Rules of Evidence are not relevant at the pleading stage). But the court need not reach this issue because even if Rule 408-protected statements could generally be stricken, there is an exception when the plaintiff "us[es] settlement communications in an independent claim for retaliation" as Flores does here. (Doc. 17 at 7 (citing *Samadi v. Quality Furniture LLC*, No. CV 12-593-PHX-SRB, 2012 WL 12870242, at *4 (D. Ariz. July 23, 2012)).)

Disclosing settlement communications does not violate Rule 408 when they are "used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence[.]" *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998); *see also Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997) (citation omitted) (Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions . . . wrongful acts are not shielded because they took place during compromise negotiations."); *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1133–34 (10th Cir. 1991) (holding affidavit obtained during settlement negotiations did not violate Rule 408 and was "completely admissible" to prove a separate violation unrelated to the claim discussed in the settlement negotiations). Flores's second count for retaliation under Title VII is based on her allegation that RLG "retaliated against [her] for engaging in protected activity by making two separate threats of filing counterclaims against [her]" after her employment with RLG had ended, during settlement conversations regarding her retaliatory wrongful-termination claim. (Doc. 12 at 6.) Flores only uses RLG's "threats of filing counterclaims" as the basis for a separate retaliation claim. (Doc. 12 at 6–7.) Because the settlement communications Flores included in her complaint form the basis of a different claim (Count 2) than that which was the subject of the communications (Count 1), they would be exempt from Rule 408 if it applied at the pleading stage. RLG's motion to strike is therefore denied.

### III. Abuse of Process Counterclaim

RLG's answer raises a counterclaim against Flores, alleging she "is using this litigation for the primary purpose of harming, harassing, and abusing RLG and RLG's status in the business and legal community." (Doc. 19 at 11–12.) RLG also alleges abuse of process because Flores included purportedly-confidential settlement communications for an improper purpose in her complaint and response to RLG's motion to strike. (Doc. 19 at 12.) Flores seeks dismissal of RLG's counterclaim. (Doc. 24.)

The same standard applies to a Rule 12(b)(6) motion to dismiss a defendant's counterclaim as to a motion to dismiss a plaintiff's claim. *See Koeplin v. Klotz*, 265 F. Supp. 3d 1039, 1041 (N.D. Cal. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

An abuse-of-process claim in Arizona requires the plaintiff to allege "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (simplified). Such an ulterior motive must be "the primary motivation for a [claimant's] actions, not merely an incidental motivation." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 (Ariz. Ct. App. 2004). Plaintiffs "must also show that, in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Id.* For example, evidence that a party made statements implying they were using the legal process for the purpose of subjecting

the other party "to excessive litigation expenses" or that the party's "use of various legal processes was not justified or used for [the] legitimate or reasonably justifiable purposes of advancing [their] interests in the ongoing litigation" may be enough to show an abuse of process. *Nienstedt v. Wetzel*, 651 P.2d 876, 882 (Ariz. Ct. App. 1982).

Flores argues that one alleged basis for RLG's abuse-of-process claim—"filing the Complaint or Amended Complaint" itself—cannot constitute abuse of process as a matter of law. (Doc. 24 at 6.) Flores is correct. *See Joseph v. Markovitz*, 551 P.2d 571, 575 (Ariz. Ct. App. 1976) ("[P]roof of abuse of process requires some act beyond the initiation of a lawsuit"). RLG admits as much. (Doc. 26 at 5 (it is "true that an abuse of process claim[ ] requires an act beyond the initiation of a lawsuit . . . .").) Arizona law therefore precludes RLG's counterclaim insofar as it is based on the sexual harassment claim Flores dropped in her amended complaint and Flores's inclusion of settlement conversations in Count 2.

RLG contends that their Fed. R. Evid. 408-based counterclaim nonetheless survives because a litigant cannot include unnecessary allegations—such as the allegedly irrelevant settlement conversations—in their complaint. (Doc. 19 at 12.) But even if that were true, it was necessary to include those statements because they formed the basis of Flores's second retaliation claim (Count 2). *See Nienstedt*, 651 P.2d at 882 ("Liability should result only when . . . the utilization of the [legal] procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."); *Crackel*, 92 P.3d at 892 (same). So, the argument fails.

That leaves only the allegation that Flores abused the legal process by attaching settlement negotiations to her response to RLG's motion to strike. RLG says there was no legitimate purpose for including those statements, thereby showing Flores had an ulterior motive (i.e., using the statements to harass RLG). (*See* Docs. 19 at 11, 26 at 5.) Two aspects of Arizona abuse-of-process doctrine foreclose a claim based on this allegation.

First, it is not clear that an attorney's decision to attach an exhibit to a response to a motion constitutes an affirmative use of process on Flores's part. A broad set of judicial procedures may give rise to an abuse-of-process claim in Arizona. *See, e.g.*, *Crackel*, 92

P.3d at 888. But the judicial procedures Arizona courts typically cite—issuance of "a summons, subpoena, garnishment, writ of replevin, arrest warrant, or 'other orders directly affecting obligations of persons or rights in property'"—all require more proactivity on the defendant's part than the act of responding to a plaintiff's motion. *See Fappani v. Bratton*, 407 P.3d 78, 81–82 (Ariz. Ct. App. 2017). Also, whether to attach an exhibit to a pleading is presumptively a lawyer's decision, not a client's. *See* Model Rules of Prof'l Conduct R. 1.2(a), 1.4 (a lawyer "shall abide by a client's decisions concerning the objectives of representation" but need only "reasonably consult with the client as to the means by which the client's objectives are to be accomplished"). RLG hasn't alleged otherwise here. RLG's counterclaim therefore does not plead action on Flores's part so as to survive a motion to dismiss. *Fappani*, 407 P.2d at 83 (affirming dismissal of abuse-of-process claim where prosecutor exercised independent judgment over whether to bring action).

Second, even if the attachment of materials to a response constituted a "willful act" on Flores's part, RLG has not plausibly pleaded that Flores attached the materials for an improper purpose. *See Cruz*, 401 P.3d at 1021. An improper purpose for an abuse-of-process claim is sufficiently pleaded when the complaint includes facts alleging a defendant "use[d] the litigation process as a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Fappani*, 407 P.2d at 83 (simplified). Bare references to "extortion" or "collateral advantage" are not enough. *Id*. at 84. Instead, a plaintiff must "allege acts constituting coercion or extortion, in any form[.]" *Id*.

RLG's counterclaim does not even allude to "coercion" or "extortion," let alone alleging an act which would constitute either of those things. Instead, RLG only argues that because the materials were, in its view, "irrelevant to [Flores's] arguments" and "unnecessary to support her response," Flores's sole or primary purpose for attaching them was to abuse legal process. (Doc. 19 at 11–12.) These allegations are insufficient to state a plausible claim for abuse of process in Arizona where a plaintiff must allege that a

defendant is doing something more than merely using the legal system as it is intended (i.e., for the purpose of resolving a dispute). *Id*. Flores's attachment of exhibits, even if unnecessary, is not so far afield from a legitimate litigation procedure that it supports an allegation she had anything "more than [the lawful] purpose" of responding to the motion to strike. *Id.* at 84; *see also Nienstedt*, 651 P.2d at 882 (for an abuse-of-process claim to succeed an act must be "so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."). And even if Flores was partially motivated by ill will toward RLG, being "motivated by spite, ill will, and malicious intentions" is not enough to plead an abuse-of-process claim. *Fappani*, 407 P.2d at 84. For these reasons, RLG's claim that Flores abused the legal process when she attached the settlement communications fails.

Flores's motion to dismiss RLG's counterclaim is granted without leave to amend because, as Flores argues, it is clear RLG cannot cure the claim's deficiencies. (*See* Docs. 24 at 12–13, 28 at 7–8.) *See In re Cloudera, Inc.*, --- F.4th ----, 2024 WL 4821506, at *6 (9th Cir. Nov. 19, 2024) (citation omitted) ("denying leave [to amend] is not an abuse of discretion if it is clear that granting leave to amend [would be] futile."); *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1073 (9th Cir. 2023) (noting leave to amend need not be granted when plaintiff could not allege additional facts consistent with a prior complaint). The circumstances of Flores's attachment of purported settlement communications are all on the public docket in this case, and based on these facts, RLG cannot plausibly show Flores attached the exhibits for an improper purpose. Instead, the record demonstrates Flores attached the communications for the legitimate purpose of responding to RLG's motion to strike.

Flores's request for attorney's fees and costs related to defending against the abuse-of-process counterclaim is denied at this stage of the case because she has cited no legal basis for that request. (*See* Doc. 28 at 8–9.)

**IV.    Conclusion**

RLG's motion to strike certain paragraphs of Flores's complaint is denied. Flores's

motion to dismiss RLG's counterclaim for abuse of process is granted and the claim is dismissed with prejudice.

Accordingly,

**IT IS ORDERED** RLG's motion to strike (Doc. 13) is **DENIED**.

**IT IS FURTHER ORDERED** Flores's motion to dismiss RLG's counterclaim (Doc. 24) is **GRANTED**. RLG's counterclaim (Doc. 19) is **DISMISSED** without leave to amend.

Dated this 5th day of December, 2024.

Honorable Krissa M. Lanham
United States District Judge